IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHANNON RUMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No.: **3:09-cv-00649-JPG-PMF** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Philip M. Frazier from United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation. Plaintiff Shannon Rumer ("Rumer") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "SSA") denying her applications for disability insurance benefits and supplemental security income payments filed on or about January 19, 2007. Rumer's applications were denied by Administrative Law Judge ("ALJ") Joseph W. Warzycki when he rendered a decision finding Rumer not disabled (Tr. 17 – 28). That decision became final when the Appeals Council declined to review the ALJ's findings (Tr. 1 – 6). Judicial Review of the Commissioner's final decisions is authorized by 42 U.S.C. § 405(g).

For the reasons set forth below, it is **RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED,** and that the Court adopt the following findings of fact and conclusions of law:

1

## I.     FINDINGS OF FACT

### A. *Procedural History*

On January 19, 2007, Rumer filed her applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning January 17, 2007. (Tr. 130 – 143).  The applications were denied initially, and again upon reconsideration.  Rumer timely filed her written request for a hearing on February 28, 2008. (Tr. 95).  On November 25, 2008, Rumer appeared and testified at a hearing before ALJ Warzycki. (Tr. 29 – 72).  On March 2, 2009, the ALJ issued an unfavorable decision finding Rumer not disabled. (Tr. 17 – 28).  On or about March 19, 2009, Rumer timely filed her Request for Review of Hearing Decision. (Tr. 15 – 16).  On, July 14, 2009, the Appeals Council of the Social Security Administration ("Appeals Council") denied Rumer's Request for Review. (Tr. 1 – 6). The July 14, 2009 decision of the ALJ stands as the final decision of the Commissioner, and Rumer has exhausted all of her administrative remedies.

### B. *Substantive History*

Rumer was 32 years old on the date of the hearing before the ALJ. (Tr. 34).  At the time of the hearing, she lived with her parents. *Id.*  Rumer has a driver's license, but only drives about 10 miles per week. (Tr. 35).  Since 2007, Rumer has been living off her son's Social Security Income. *Id.*  After graduating from high school in 1997 with a special education curriculum, Rumer worked for ten years as a certified nursing assistant, but stopped working in 2007. (Tr. 36 – 37).  Rumer's certified nursing assistant license was still current as of the hearing. (Tr. 38).

In 2004, Rumer was in a car accident, and since then, has suffered from seizures. (Tr. 55). Rumer does not have any problems using the bathtub or shower, she cleaned and vacuumed, got her son ready for school in the morning, cooked, swam, and walked on a track. (Tr. 22).

Although Rumer has tremors and head shakes, she has no problems understanding, sitting, standing, and walking. *Id.*

In 2000, at age 23, Rumer completed an independent psychological assessment report at the Southern Illinois University Rehabilitation Institute. (Tr. 252 – 259.)  Rumer had a 66 Full Scale IQ, 67 Verbal IQ, and 72 Performance IQ. (Tr. 253.)  Dr. Bordieri stated that "although her IQ scores put her in the Mentally Retarded range of cognitive functioning, her score on the Adaptive Behavior: Street Survival Skills Questionnaire preclude this as a formal diagnosis." (Tr. 256.)  Dr. Bordieri thus diagnosed Borderline Intellectual Functioning. (Tr. 259.)

In 2007, Dr. Rudolph examined Rumer for the State agency and completed a psychological report. (Tr. 385 – 388).  He opined that Rumer appeared to have a borderline to low-average intellectual capability. (Tr. 386).  Dr. Wharton reviewed the record for the State agency and found that Rumer did not meet the requirements for Mental Retardation under Listing 12.05. (Tr. 389).  His notes listed Rumer's extensive daily activities. (Tr. 401.)  Dr. Henson affirmed Dr. Wharton's determination for the State agency, commenting that Rumer "carries out a fair range of adls [activities of daily living]." (Tr. 527 28.)

At the hearing, a vocational expert ("VE") testified that a certified nursing assistant was a semiskilled job of medium exertion. (Tr. 66).  The VE also testified that Rumer had a "good work record." (Tr. 66.)  The ALJ asked the VE to consider an individual of Rumer's age, education, and work experience who was limited to simple, repetitive, light work. (Tr. 66–67.)  The VE identified over 100,000 thousand jobs in Illinois that such a claimant could perform. (Tr. 68).

In his opinion, the ALJ concluded that Rumer has severe impairments of seizure disorder, osteoarthritis, and borderline intellectual functioning, but that there were a significant number of jobs she could perform, and therefore found her not disabled. (Tr. 28).

## II. CONCLUSIONS OF LAW

### A. *Legal Background*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act ("Act") is limited to a determination of whether those findings are supported by substantial evidence. *42 U.S.C. § 405(g)* ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive…."); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); See also *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) (a reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1972) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002); *Green v. Shalala,* 51 F.3d 96, 101 (7th Cir. 1995). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. *Golembiewski*, 32 F. 3d at 915; *Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex. rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

DIB and SSI are available only to those individuals who can establish a "disability" under the terms of the Act. The claimant must show that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *42 U.S.C. § 423(d)(1)(A).*

The SSA regulations enumerate a five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing a disability. *20 C.F.R. §§ 404.1500 – 404.1599* for DIB; and *20 C.F.R. § 416.900 – 416.999* for SSI.[1]

The ALJ must first consider whether the claimant is presently employed or "engaged in substantial gainful activity." *20 C.F.R. § 404.1520(a)(4)(i)*. If the claimant is, he or she is not disabled and the evaluation process is over; if he or she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits…physical or mental ability to do basic work activities." *20 C.F.R. § 404.1520(a)(4)(ii)*. If the claimant's impairment is not severe, then the process is over, and the claimant is considered not disabled. If the finding is severe, however, the ALJ must proceed to step three.

At step three, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. *20 C.F.R. § 404.1520(a)(4)(iii)*. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. *Id.* However, if the impairment does not so limit the claimant's remaining capabilities, in step four, the ALJ reviews the claimant's "residual functional capacity," ("RFC") and the physical and mental demands of his or her past work. *20 C.F.R. § 404.1520(a)(4)(iv)*. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. *Id.* However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts, at step five, to the Commissioner to establish that the claimant, in light of his or her age, education, work experience, and functional capacity to work, is capable of performing other work, and that such work exists in the national economy. *20 C.F.R. § 404.1520(a)(4)(v)*. If the claimant is either determined not to be capable of performing

---

[1] The DIB and SSI regulations are codified independently, but are virtually identical for purposes of this case. Thus, all citations relevant to this appeal will be to the DIB regulations.

other work, or such work does not exist in the national economy, the ALJ will enter a finding that claimant is disabled.

The law governing disability determinations provides that ALJs are not required to discuss every piece of evidence; however, they must build a bridge of logic connecting evidence to their conclusion. Regarding credibility assessments, they must articulate the reasons behind their evaluation. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). This standard is not high; only minimal articulation is needed – that is, only enough to allow a reviewer to follow the ALJ's thought process is required. Once the Court understands the ALJ's reasoning, it can determine whether the rationale has support in the administrative record and meets the applicable legal standard. When the ALJ does not minimally discuss or explain the reasons for rejecting evidence, the Court cannot initiate its review.

### B. Analysis

After considering the evidence, the ALJ concluded that Rumer was not disabled. (Tr. 17 – 28). In this appeal, Rumer argues that the ALJ erred during step 3 of his analysis in failing to find that Rumer met listing 12.05(C) for Mental Retardation.

The listing for Mental Retardation is found under Listing 12.05 in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Listing 12.05(C) states:

> "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.…
>
> > **C.** A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function…"

With respect to the Mental Retardation listing, 20 C.F.R. Pt. 404, Subpt. P, App. 1 states that "[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing." Thus, in order for there to be a finding of mental retardation under Listing 12.05(C), a claimant must satisfy three elements:

> (1) subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before the age of 22;
> (2) a valid verbal, performance, or full scale IQ of 60 through 70; and
> (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

In his opinion, the ALJ acknowledged the fact that "[i]n 2000, the claimant obtained verbal intelligence quotient (IQ) score of 67." (Tr. 24). Thus, the second element for a finding of mental retardation under Listing 12.05(C) was met. The ALJ concluded, however, that because Rumer was diagnosed with borderline intellectual functioning and not mental retardation by Dr. Rudolph, she was unable to show a deficit in adaptive functioning before the age of 22, and therefore, failed to satisfy the first element for a finding of mental retardation under Listing 12.05(C). *Id.* With respect to the third element under Listing 12.05(C), the ALJ concluded that Rumer's difficulty in performing daily activities was due to her physical, rather than mental, problems. *Id.*

It is not clear why the ALJ did not find that Rumer satisfied the third element for a finding of mental retardation given the fact that he acknowledged that Rumer's difficulty in performing daily activities was due to her physical, rather than mental, problems. As stated above, the third element requires either "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *20 C.F.R. Pt. 404, Subpt. P, App. 1. Listing 12.05(C).* Given that the ALJ found that Rumer had the severe impairments of seizure

7

disorder, osteoarthritis, and borderline intellectual functioning, one would think that the physical problems precipitated by these severe impairments would satisfy the requirement of "…a physical impairment imposing…significant work-related limitation[s]." *Id.*  Nonetheless, even if the ALJ did find that Rumer met the second and third elements for a finding of mental retardation under Listing 12.05(C), Rumer still would have had to satisfy the first element by showing a deficit in adaptive functioning before the age of 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1. 12.00(C)(1) states that adaptive activities include "…cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."  In support of his finding that Rumer lacked a deficit in adaptive functioning prior to the age of 22, the ALJ noted that Rumer is able to dress and bathe herself, that she enjoys people and talked to neighbors, that she did laundry, vacuumed, got her son ready for school in the morning, paid bills, and cooked. (Tr. 24 – 25).  Despite the fact that Rumer is no longer under the age of 22, the ALJ analyzed Rumer's current capabilities in an effort to show that she did not suffer from a deficit in adaptive functioning prior to the age of 22.  More precisely stated, it is highly unlikely that Rumer would have been completely unable to perform any of the abovementioned activities before the age of 22, and then, on her 22nd birthday, suddenly be able to perform all of these activities.  The fact that Rumer can perform these activities currently is evidence of the fact that she did not suffer from a deficit in adaptive functioning prior to the age of 22; after all, she would have had to have learned how to bathe, cook, clean, and talk to people before turning 22, in order to be able to do these things after turning 22.

Therefore, the Court finds that the record provides substantial evidence in support of a finding that Rumer did not satisfy the requirement that she demonstrate a deficit in adaptive functioning prior to the age of 22.

### III. RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED,** and that the Court adopt the aforementioned findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1 (b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**SO RECOMMENDED.**

**DATED: April 12, 2010.**

                                            **s/** *Philip M. Frazier*
                                            **PHILIP M. FRAZIER**
                                            **UNITED STATES MAGISTRATE JUDGE**